## HOFFMAN HOUSE OF NEW YORK v. JORDAN.

(Supreme Court, Appellate Term. June 28, 1899.)

CORPORATIONS—ESTOPPEL.

　　Where one of two stockholders in a hotel corporation told the clerk to charge a guest's bill to him, and the other stockholder, who was the president, assured the guest it was all right; that it was a corporation technically, but the two owned the stock between them, and the clerk acceded to the instruction, but failed to mark it on the books, and the guest credited the amount on the first stockholder's note to him,—the corporation was estopped to look to the guest for the bill.

Appeal from municipal court, borough of Manhattan, Sixth district.

Action by the Hoffman House of New York against Joseph V. Jordan. There was a judgment for defendant, and plaintiff appeals. Affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVEN-TRITT, JJ.

Turner, McClure & Rolston, for appellant.

P. C. Talman, for respondent.

MacLEAN, J. A hotel company brought this action for "board," —that is, for lodging, meals, and incidental disbursements,—which were furnished to and for the defendant some time ago, when the hotel corporation was under a different management, and its shares apparently belonged to other owners, practically to two persons, one of whom was president, and the other, a Mr. McDonald, holding almost half the stock, was a director. Both pleadings were oral. The defense was "payment." The plaintiff's clerk, who had been such many years, testified: "Mr. McDonald and myself were talking about business pertaining to the house. Mr. Jordan [the defendant] came up to the window, and　*　*　*　said, 'Oh, Mr. McDonald, I owe a bill here.' Mr. McDonald, in a kind of laughing way, said, 'Yes? That's all right.' He said, 'Oh, charge that to me.'" The clerk further testified that he knew that McDonald was indebted to Mr. Jordan for several thousand dollars. The defendant's account of the incident was longer, and more circumstantial. He stated he had some conversation with McDonald about the payment of a note; that McDonald told him he was entirely responsible; that he owned one-half of the Hoffman House, and the note would be paid. Defendant then said he was going to leave the house that day, and owed a bill there. McDonald went through the private office, and asked the cashier (the person whose testimony is given above) for the amount, and then said, "You charge that to my account," and that he (Mr. Jordan) asked the clerk, "Is that all right?" and was told: "Yes; that is all right. Mr. McDonald says so." Mr. Jordan

did not rest here. Being, as he said, treasurer of a corporation, he doubted whether McDonald had a right to do this, and so appealed to the president, stating the transaction, including the fact that he had allowed to McDonald the amount of the bill upon the renewal of his note, and asked whether the clerk had the power, and the president said he had the power, though he did not know whether it ought to be exercised in that way. Then the defendant said he would take the matter back, and not allow McDonald to deduct the amount of the bill from his renewal note; but the president replied: "It will be all right. * * * It is a corporation technically, but we own the stock between us two." Thereupon the defendant told the clerk the president said it was all right, and asked to have his luggage brought down, which was done upon order of the clerk, and the defendant left the hotel. The former president of the plaintiff company corroborated the statements of the defendant,—corroborated them entirely, so far as he remembered them. The clerk was not recalled to contradict the defendant. Indeed, there was little dispute as to the facts of the transaction. It is true, as counsel for plaintiff strenuously urges, that a corporation is an entity distinct from the individuals who own the stock, although the practical importance of the principle has been seriously questioned upon authority in this state. That is of no moment in this case. It is contended for the plaintiff that the facts shown by the defendant amount to neither payment nor novation; furthermore and especially that, even if McDonald told the clerk to charge defendant's bill to him, and the clerk acceded to the instruction, although he did not so mark it on the books, such action did not bind the corporation. The first contention needs small consideration. If the defendant's debt was canceled, it matters little whether it was canceled by payment made on his behalf by McDonald or through the transfer to and assumption by McDonald of the debt. The remaining position is untenable. One's travels need be neither frequent nor far for him to know that the hotel clerk is accredited with and permitted to assume large authority. He decides whether guests without luggage shall be received without a deposit, assigns accommodations, bargains as to the terms, adjusts disputes about the bill, and upon its settlement gives the direction which releases and delivers the luggage. He is the ordinary representative of the house, and ordinarily the only representative with whom the guests come into contact. They do not need to inquire into his authority. His very position betokens that. He is invested with apparent authority to represent the proprietor; and that proprietor, whether a natural person or a corporation, is bound by what takes place in the usual course of business, and persons dealing with him as such agent may rely upon his apparent authority. The transfer of one guest's bill to another is of such common occurrence at the desks of inns that the power to make it might well be presumed in the clerk, if he assumed to exercise it, and if, upon his order thereafter, the luggage was delivered to the parting guest. Here, however, the president of the corporation, upon information of the facts, confirmed the clerk's action, whether called "payment" or "novation," and estopped the corporation from claiming otherwise by preventing

the defendant from revoking his arrangement with Mr. McDonald. The judgment should be affirmed, with costs.

Judgment affirmed, with costs.    All concur.